UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHARON L. EVERSON,<br><br>       Plaintiff,<br> v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:11-cv-05960-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for November 9, 2012 |

Plaintiff has brought this matter for judicial review of defendant's denial of plaintiff's application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On May 5, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of November 17, 2005, due to a neck/back condition. See Administrative Record ("AR") 20, 134. That application was denied upon initial administrative review on December 18, 2007, and on reconsideration on June 3, 2008. See AR 20, 73, 79. A hearing was held before an administrative law judge ("ALJ") on December 10, 2009, at which plaintiff, represented by

REPORT AND RECOMMENDATION - 1

counsel, appeared and testified, as did a medical expert. See AR 38-66.

On February 25, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 20-32. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 15, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On November 18, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1. The administrative record was filed with the Court on March 14, 2012. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing plaintiff's residual functional capacity; and (4) in finding her to be capable of returning to her past relevant work. Plaintiff further argues this matter should have been remanded for a new administrative hearing, based on additional evidence submitted to the Appeals Council after the ALJ issued his decision. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed. Although plaintiff requests oral argument, the undersigned finds such argument to be unnecessary here.

DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

REPORT AND RECOMMENDATION - 2

Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

REPORT AND RECOMMENDATION - 4

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

### A.   Evidence of Fibromyalgia and Chronic Pain Syndrome

Plaintiff argues the ALJ erred in finding she did not have fibromyalgia or a chronic pain syndrome, which she asserts "tainted his evaluation of all of the evidence." ECF #12, p. 3.  With respect to this issue, the ALJ specifically found as follows:

> There is suggestion of possible diagnoses of fibromyalgia and chronic pain with psychological overlay, such as depression and anxiety. (Exhibits 10F/4, 7F/4, 12F/72).  Although tenderness to palpation of some tenderpoints was noted at times, examination also showed report of exquisite tenderness in over thirty areas and almost every joint throughout her body. (Exhibits 10F/3,4, 7F/3).  A rheumatology evaluation was recommended to establish a diagnosis of fibromyalgia, but it does not appear that such evaluation was performed. Furthermore, recent medical records do not show reports of ongoing pain or depression to health care providers nor do they show diagnoses or treatment of fibromyalgia, depression, chronic pain, or psychological factors affecting pain.  Rather, the claimant is described as well-appearing and in no distress with normal mood and affect. (Exhibits 17F, 7F/2-3).  The medical evidence and overall record do not establish medically determinable impairments of fibromyalgia, depression, anxiety, or somatic disorder.  Nevertheless, as discussed below, the claimant's subjective experience and reports of symptoms, including chronic pain, have been considered to the extent credited

REPORT AND RECOMMENDATION - 5

in arriving at her residual functional capacity herein.

AR 23-24; see also AR 28 (noting further that "[e]xamination findings included reports of pain to palpation of areas well beyond those identified as fibromyalgia tenderpoints and in most joints of her body").

The undersigned agrees with plaintiff that the ALJ erred in finding the overall record does not establish the presence of fibromyalgia or a chronic pain syndrome, but merely suggests the possibility thereof. In late December 2006, Scott L. Havsy, D.O., found "[t]ender gluteal regions and hip areas again consistent" with a diagnosis of "moderate[ly] severe" fibromyalgia. AR 404. In early November 2007, Jason G. Attaman, D.O., diagnosed plaintiff with "[l]ikely fibromyalgia/central pain syndrome."[2] AR 444. It is true that the record contains a diagnosis of "[p]ossible fibromyalgia" from Dale Tommervik, P.T., plaintiff's physical therapist (AR 275), but Mr. Tommervik is not an "acceptable medical source," and thus his opinion is generally treated as lay witness evidence that is entitled to less weight.[3] In addition, the mere fact that plaintiff did not have an additional test for fibromyalgia performed – even though Dr. Havsy recommended it (see AR 405) – is insufficient to establish the absence of that condition, given that as noted above Dr. Havsy gave a definite diagnosis thereof.

That being said, the undersigned finds the ALJ's error here to be harmless. An error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Parra v.

---

[2] Further, in regard to at least the pain syndrome aspect of his diagnosis, Dr. Attaman went on to comment that "the predominant physical exam finding . . . was global pain to light palpation throughout her body," which seemed "to be her major issue at this point." AR 445.

[3] See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 *5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals'.").

REPORT AND RECOMMENDATION - 6

Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision."). Plaintiff has not argued with any specificity,[4] let alone shown, that the ALJ's failure to properly consider her fibromyalgia and chronic pain syndrome, adversely affected the outcome of her case or impacted the ALJ's evaluation of the remaining evidence in the record to her detriment. Accordingly, the undersigned declines to overturn the ALJ's determination of non-disability on this basis.

B.  Dr. Tomski

Plaintiff next challenges the ALJ's following findings:

> . . . Mark Tomski, M.D., completed a Physical Residual Functional Capacity questionnaire in December 2009 noting significant limitations in functioning, which in effect would preclude the claimant's ability to sustain work activities for a full workday. (Exhibit 18E). Dr. Tomski provided medical treatment to the claimant years ago and had not seen the claimant since 2005 until she sought his opinion in December 2009. Therefore, Dr. Tomski is considered an examining medical source. Regardless, Dr. Tomski's opinion is not accorded weight because it appears based, in large part, on the claimant's subjective reports of symptoms and limitations and is not consistent with the longitudinal treatment record or with opinions of other medical sources indicating an ability to perform sedentary to light exertional activities. (Exhibits 10F/4, 12F/70-74, 6F/26, 16F/8, and medical expert testimony)[.]

AR 28-29. Plaintiff argues that in so finding, the ALJ failed to acknowledge that Dr. Tomski both reviewed the entire record on file and performed an examination of her on December 1, 2009, and that there is no evidence that he based his opinion on her subjective reports, rather than on his examination and review of the record. However, given that the questionnaire Dr. Tomski completed – and, indeed, his prior treatment records – contains little in the way of objective findings to support the effectively disabling limitations he noted in that questionaire

---

[4] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

REPORT AND RECOMMENDATION - 7

(see AR 228-32, 247-58), the ALJ was not remiss in finding that it appeared Dr. Tomski based those limitations in large part on plaintiff's subjective complaints. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); see also Morgan, 169 F.3d at 601; Allen, 749 F.2d at 579 ("[i]f the evidence admits of more than one rational interpretation," defendant's decision must be upheld).

Plaintiff goes on to argue the fact that Dr. Tomski reached conclusions different from the opinions of other medical sources in the record, is not a legitimate reason for the ALJ to give no weight to those conclusions. Clearly, though, it is, given that, as the Ninth Circuit has expressly held, an ALJ need not accept the opinion of even a treating physician, if it is "inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. Plaintiff argues further that the ALJ failed to acknowledge Dr. Tomski's opinion is fully consistent with the opinions of many of the medical sources in the record. But of the several physicians and other medical sources cited by plaintiff in her opening brief (see ECF #12, p. 5), only Dr. Havsy actually gave an opinion as to her ability to work (see AR 433).[5] As discussed in greater detail below, furthermore, the ALJ did

---

[5] While the other physicians and medical sources plaintiff references did provide objective clinical findings, nothing in their treatment notes indicate those findings translate into actual work-related functional limitations that impact her ability to be employed. See 261, 267-68, 274, 276, 281-82, 325, 330, 332, 334-35, 339, 345, 347-51, 353, 403-05, 430-32, 463, 515-16, 525, 527-29, 595, 597, 619-22, 628-33. Further, the mere existence of an impairment – or clinical findings indicative thereof – "is insufficient proof of a disability" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). The undersigned thus also declines to find any error on the ALJ's part in not expressly addressing those findings in his decision. See Vincent, 739 F.3d at 1394-95 (ALJ "need not discuss *all* evidence presented" to him or her, but must only explain why "significant probative evidence has been rejected") (emphasis in original); see also Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d at 610. Contrary to plaintiff's contention, such findings do not constitute significant probative evidence supportive of her allegation of disability, given that as just discussed, they do not themselves demonstrate the existence of significant work-related limitations. The same is true in regard to plaintiff's argument concerning the ALJ's alleged failure to acknowledge the objective findings from the other three medical sources in the record he asserts also are consistent with Dr. Tomski's opinion. See AR 379-80, 443-44, 521. Indeed, as plaintiff herself admits, those sources reached *different* conclusions as to her ability to work from the ones offered by Dr. Tomski, and plaintiff fails to point out how their findings are consistent with Dr. Tomski's conclusions but not their own. See AR 381, 445, 519. As such, there is no error here as well.

REPORT AND RECOMMENDATION - 8

not err in rejecting Dr. Havsy's opinion.

C.  Dr. Havsy

Plaintiff challenges as well the findings below made by the ALJ:

> Scott Havsy, D.O., a board certified pain management physician, evaluated the claimant and provided some medical care for a limited period of time in 2006-2007. In December 2006 and July 2007, Dr. Havsy concluded that the claimant was not able to work and was not capable of maintaining gainful employment based on advanced degenerated spine. (Exhibits 8F/70 and 6F/8). There is objective evidence of degenerative changes of the claimant's spine and some joints, but some medical sources have indicated that these changes do not fully account for reported symptoms and limitations. (Medical expert testimony and Exhibits 12F/72 and 10F). It is noted that Dr. Havsy recommended a general conditioning program in January 2007, which suggests that deconditioning may have been a factor in his opinion. (Exhibit 7F/1). Dr. Havsy does not fully explain his conclusion that the claimant is unable to sustain work, and his opinion is not consistent with the longitudinal treatment record, which shows few reports of symptoms and little, if any, medical treatment for chronic pain in the past two years. Dr. Havsy's opinion also is not consistent with other medical source opinions indicating an ability to perform sedentary to light exertional work. (Exhibits 12F/70-74, 10F/4, 6F/26, 16F/8, and medical expert testimony). For these reasons, Dr. Havsy's opinion is not accorded controlling or significant weight.

AR 29. Plaintiff argues Dr. Havsy described clinical findings that do support his conclusions, including an antalgic gait and decreased sensation. See AR 430, 432. But these findings hardly are indicative of a total inability to perform work. Nor are any of the other clinical findings Dr. Havsy noted suggestive of such inability. See AR 430-32. Plaintiff goes on to argue that Dr. Havsy's opinion "is in fact consistent with the longitudinal record," as well as "with the opinions of many medical sources," but fails to explain in what ways this is so. ECF #12, pp. 7-8; See Carmickle, 533 F.3d at 1161 n.2; Paladin, 328 F.3d at 1164; Kim, 154 F.3d at 1000. Nor for the same reasons discussed above in regard to Dr. Tomski's disability opinion, does the undersigned

find such consistency in the record.[6]

Plaintiff further argues it was her lack of insurance that prevented her from getting access to medical treatment (see AR 49-50), and thus this does not constitute a valid reason for rejecting the opinion of Dr. Havsy.  But as noted by the ALJ, while plaintiff "testified that she ha[d] not seen doctors or taken prescribed medications for symptoms because she has no medical insurance and cannot afford it[,] . . . medical records obtained after the hearing indicate that she sought and received medical treatment when needed, such as for upper respiratory infections, sinusitis and allergies." AR 28.  Given this inconsistency, the ALJ cannot be faulted for declining to find plaintiff credible on this issue. See AR 28; Reddick, 157 F.3d at 722; Sample, 694 F.2d at 642; Morgan, 169 F.3d at 601.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

---

[6] Also for the same reasons discussed above in regard to Dr. Tomski, the undersigned rejects plaintiff's assertion that "the fact that Dr. Havsey reached a different conclusion about [her] functional limitations than was reached by some other medical sources is not a legitimate reason to give no weight to his opinion." ECF #12, p. 8.

REPORT AND RECOMMENDATION - 10

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part because "[t]he objective medical evidence is not consistent with the nature and severity of [her] reports of symptoms and limitations." AR 26; see also AR 27-28; Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's subjective complaints are "inconsistent with clinical observations" can satisfy clear and convincing requirement).  Plaintiff argues the ALJ's reliance on this reason for discounting her credibility "is tainted by his failure to discuss any of the objective evidence which is consistent with [her] testimony about her limitations." ECF #12, p. 18. Again, though, plaintiff fails to state what that evidence is.[7]  To the extent this consists of the other medical opinion source evidence discussed above, plaintiff's argument is rejected for

---

[7] Plaintiff also fails to support his claim that while the ALJ "discusses the medical evidence" in discussing her credibility, he "does not clearly link his credibility analysis to that evidence, or explain any way in which the medical evidence truly contradicts [her] description of her symptoms and limitations." ECF #12, p. 19. To the contrary, over the course of three pages the ALJ expressly discussed in fairly significant detail how the relatively benign objective clinical findings failed to support the degree of limitation she has alleged. See AR 26-28.  This was sufficient. See Reddick, 157 F.3d at 725 (ALJ may resolve questions of credibility and conflicts in evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

REPORT AND RECOMMENDATION - 11


the same reasons that evidence fails to support the opinions of Drs. Tomski and Havsy.[8]

The ALJ also discounted plaintiff's credibility for the following reasons:

> . . . [R]ecent medical records suggest that the claimant has been able to manage her symptoms with use of over-the-counter medication, such as aspirin. The claimant testified that she has not seen doctors or taken prescribed medications for symptoms because she has no medical insurance and cannot afford it. However, medical records obtained after the hearing indicate that she sought and received medical treatment when needed, such as for upper respiratory infections, sinusitis and allergies. At these appointment, the claimant did not mention ongoing severe pain and symptoms nor did she seek medical advice about over-the-counter medications for pain relief despite her testimony that she sleeps only three hours due to pain. (Exhibit 17F). The claimant has not received the type of medical care and treatment over the past two years that one would expect given the severity of her reported symptoms and limitations.

AR 28. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). As with Dr. Havsey's disability opinion as discussed above, the ALJ did not err in discounting plaintiff's credibility on this basis as well, given the evidence that plaintiff continued to seek medical care for conditions other than those in regard to which she claims cause her to be disabled, despite her alleged inability to afford to do so.[9]

Lastly, the ALJ discounted plaintiff's credibility because:

---

[8] Plaintiff argues as well that the ALJ's discounting of her credibility here is also "tainted by his improper rejection of the opinions of Dr. Tomski and Dr. Havsey, as well as his failure to find that [she] has fibromyalgia and chronic pain syndrome, two impairments which can fully explain [her] reported symptoms." ECF #12, p. 18. As discussed above, however, the ALJ did not err in evaluating the opinions of Drs. Tomski and Havsy. Further, while the ALJ did err in finding the diagnosis of fibromyalgia and a pain syndrome in the record were not medically determinable impairments, also as discussed above that error was harmless. In addition, although it may be that those diagnoses potentially *could* be a cause of her reported symptoms, plaintiff has failed to point to any evidence in the record that they actually are the cause thereof, let alone to the extent of severity being claimed.

[9] See also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding discounting of claimant's credibility by ALJ in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain).

REPORT AND RECOMMENDATION - 12

> The record also suggests inconsistency in some reports of activities. For example, the claimant reported that her husband performs most household chores, and she can sit or stand for only ten minutes at a time. However, the claimant also testified that she traveled to Iowa in August 2008 and stayed there for a month to help with an estate, which seems somewhat inconsistent with pain of a severity that limits standing and sitting to only ten minutes at a time and precludes household chores. The claimant reported difficulty turning her head, but she continues to be able to drive. She also reported limited ability to use her hands for gross or fine manipulation, but she is able to grip the steering wheel, hold a cane, and use her hands for dressing and grooming. (Claimant testimony).

AR 28. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

Plaintiff argues none of the above "limited activities" are inconsistent with her testimony. ECF #12, p. 18. The undersigned disagrees. It certainly was reasonable for the ALJ to surmise that a month-long trip out-of-state for the purpose of helping with an estate is inconsistent with plaintiff's alleged total disability. In addition, the fact that plaintiff continues to be able to drive, albeit for relatively short distances, contradicts her self-reports of limited ability to use her hands

REPORT AND RECOMMENDATION - 13

for fine or gross manipulation, and of difficulty turning her head, as driving clearly involves the need and capability of performing such tasks. The undersigned thus finds the evidence of such activities contradicts plaintiff's "other testimony." Orn, 495 F.3d at 639.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found that plaintiff had the residual functional capacity to perform light work, but that she could not climb ladders, ropes and scaffolds and must avoid concentrated

REPORT AND RECOMMENDATION - 14

exposure to vibration and hazards. See AR 24.  Plaintiff argues the ALJ's RFC assessment is not supported by substantial evidence, given the ALJ's errors in rejecting the opinions of Dr. Tomski and Dr. Havsy and his failure to properly discount her credibility.  But because the ALJ properly dealt with the medical evidence in the record and the issue of plaintiff's credibility, he did not err in assessing the above residual functional capacity.

IV.  The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as an office assistant, as it did not require the ability to perform work-related activities precluded by the above RFC assessment. See AR 31. Plaintiff argues again that this finding is erroneous based on the ALJ's improper evaluation of the medical evidence in the record and assessment of her credibility.  Plaintiff has the burden at step four to show she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  Given that as discussed above, the ALJ did not err as alleged, plaintiff has not met her burden, and thus this challenge to the ALJ's step four determination must fail as well.

V.  Additional Evidence Submitted to the Appeals Council

After the ALJ had issued his decision, additional evidence consisting of treatment notes and diagnostic studies was submitted to the Appeals Council. See AR 1, 4-5, 622-27, 630-32. Plaintiff argues that reversal of defendant's decision and remand for further administrative proceedings should be ordered based on such evidence in conjunction with the other evidence of record discussed above.  Defendant does not contest the propriety of the Court considering this additional evidence in reviewing the record overall to determine whether the ALJ's non-disability determination is supported by substantial evidence, even though the ALJ himself

REPORT AND RECOMMENDATION - 15

cannot be faulted for not considering it. See Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) ("[W]e consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council."); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials submitted to Appeals Council properly may be considered); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review). Nothing in that evidence, though, indicates that plaintiff suffers from any actual work-related limitations stemming from the diagnosis and other clinical findings contained therein. Accordingly, the undersigned finds it to be insufficient to overturn the ALJ's non-disability determination in this case.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 9, 2012**, as noted in the caption.

DATED this 22nd day of October, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16